IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| WHITNEY ROMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:19-CV-06095-DGK |
| ) | |
| AFFINITY WORLDWIDE, LLC, ) | |
| AFFINITY MEDIA SERVICES, LLC, and ) | |
| THM MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT AS TO DAMAGES

Plaintiff is a local photographer who took the following photograph ("Photograph") of the interior of a home in the Kansas City, Missouri, area:



The Copyright Registration Certification VA 2-159-226 issued by the United States Copyright Office evidences Plaintiff's rights to the Photograph. Defendants Affinity Worldwide, LLC ("Affinity Worldwide"), and Affinity Media Services, LLC ("Affinity Media") (collectively the "Affinity Defendants") are local marketing and media companies who create, publish, and distribute "TheHomeMag of KC" to Missouri residents.

In January 2019, despite knowing Plaintiff held the rights to the Photograph, the Affinity Defendants reproduced the Photograph on the cover of their magazine without her consent. They

then distributed the magazine to approximately 130,000 residents in the Kansas City, Missouri, area and displayed the magazine electronically on the internet. The Affinity Defendants continued using the Photograph even after Plaintiff notified them that they did not have permission to do so. The Affinity Defendants also received revenues for the publication of the magazine.

Plaintiff subsequently filed a lawsuit against Affinity Media for copyright infringement in federal court. Plaintiff filed an amended complaint against both Affinity Defendants on November 13, 2019, seeking an injunction to restrain infringement, the impoundment of the infringing work, damages, costs, and attorneys' fees.[1] Am. Compl., ECF No. 14. Two days later, both Affinity Defendants were served with a copy of the amended complaint and the summons. Return of Service, ECF Nos. 16, 17. After their time to file an answer or otherwise respond to the amended complaint expired, the Clerk of the Court entered defaults against the Affinity Defendants. Default, ECF No. 28. Plaintiff then moved for default judgment as to the Affinity Defendants' liability. Mot. for Partial Default J., ECF No. 31. On June 25, 2020, the Court granted the motion and allowed Plaintiff to engage in post-judgment discovery in order to determine her damages. Order, ECF No. 32.

Plaintiff has now completed her post-judgment discovery and moves for default judgment against the Affinity Defendants as to her damages, ECF No. 48. Plaintiff has filed an affidavit in support of her motion, ECF No. 50. Plaintiff attached to her affidavit Affinity Media's income statement for the period ending on December 31, 2018, Ex. 5, ECF No. 50-5, and its monthly bank deposit records from January through October 2019, Ex. 6, ECF No. 50-6. Plaintiff also attached Affinity Worldwide's balance sheet as of December 31, 2019, Ex. 4, ECF No. 50-4, and its monthly bank deposit records from January through October 2020, Ex. 3, ECF No. 50-3. Neither

---

[1] Plaintiff also sued THM Management, LLC ("THM"), however the Court dismissed THM for lack of personal jurisdiction. Order, ECF No. 29.

Defendant filed a response to this motion, and the time to do so has passed. The Court has reviewed Plaintiff's calculation of damages, and the Motion is GRANTED IN PART.

## Standard

Once a defendant is in default, a court may enter a default judgment against that party. Fed. R. Civ. P. 55(b)(2). In considering a motion for default judgment, the court takes as true all allegations in the complaint that relate to liability. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, allegations relating to the amount of damages must be proven by the plaintiff to a reasonable degree of certainty. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001). The district court must provide detailed findings regarding damage calculations even in default judgments. *Stephenson v. El–Batrawi*, 524 F.3d 907, 916–17 (8th Cir. 2008) (finding "generic reference to evidentiary support for the damages determination" is insufficient). Plaintiff may prove damages by a sworn affidavit and supporting documentation, and a district court need not hold a hearing where, as here, a calculation of damages is "capable of being computed based on the facts of record." *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (quotation omitted); *see also SSM Managed Care Org., L.L.C. v. Comprehensive Behav. Care, Inc.*, No. 4:12-CV-2386 CAS, 2014 WL 1389581, at *2-4 (E.D. Mo. Apr. 9, 2014) (relying on affidavits of movant's attorney and executive officer as sufficient to establish attorney's fees and costs, and damages from breach of facility provider agreement, respectively).

## Discussion

A "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In order to establish an infringer's profits, a "copyright owner is required to present proof only of the

infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*

Plaintiff seeks damages of $149,500 attributable to the lost sales. Plaintiff has calculated this amount by finding the number of homes and businesses who received a copy of the TheHomeMagKC with the Photograph on the cover, which equates to 130,000 copies of the photograph. Roman Aff. ¶ 51, ECF No. 50. Plaintiff states that in a direct mail advertisement campaign she could expect to sell a licensed photograph to 1 to 2 percent of recipients. *Id.* ¶ 56–61. As such, Plaintiff multiplied $115—the profit she normally receives on a copy of one of her licensed photographs—by 1300, or 1 percent of the 130,000 copies distributed by Defendants. *Id.* However, Plaintiff does not state that she does, or ever has, sold licenses of her photographs via direct mail campaign. Assuming she does—and that she sent out a direct mail advertisement to sell licenses of the Photograph—Plaintiff does not state, much less demonstrate, that Defendant's unlicensed reproduction of the Photograph on the cover of the magazine cost her sales.

Plaintiff also seeks damages of $1,250,449—an amount she argues represents Affinity Worldwide's profits attributable to the infringement of her copyright. Plaintiff relies only on Affinity Worldwide's December 31, 2019, balance sheet and its banking records from January to November of 2020 to support this amount. Affinity Worldwide's 2020 banking records show that it deposited $815,747.89 between January and November. ECF No. 50-3. Plaintiff states in her affidavit that, if Affinity Worldwide had included twelve months of bank deposits, the total bank deposits from 2020 would equal $889,907. Roman Aff. ¶ 34, ECF No. 50. Plaintiff added this figure to $681,009.25—Affinity Worldwide's accounts receivable on December 31, 2019, ECF No. 50-4—to conclude that Affinity Worldwide has annual revenue of $1,570,916. Roman Aff. ¶ 38.

Plaintiff then assumed—based on her expertise as a professional photographer—that Affinity Worldwide only received revenue from the Photograph for three months after the publication and distribution of the magazine, or from January to March of 2019. *Id.* ¶ 41. Because Affinity Worldwide made 79.6 percent of its 2020 bank deposits between January and March of 2020, Plaintiff assumed that Affinity Worldwide likewise received 79.6 percent of its 2019 revenue between January and March of 2019. *Id.*; *see also* ECF No. 50-3. Plaintiff thus calculates the amount of Affinity Worldwide's revenue attributable to the Photograph to be $1,240,449, or 79.6 percent of Affinity Worldwide's annual revenue.

Plaintiff's calculations regarding Affinity Worldwide's profits are based on a number of questionable assumptions. For example, her calculations assume Affinity Worldwide's 2020 bank deposits were wholly a result of sales revenue and not capital infusion or asset liquidation and that Affinity Worldwide's 2019 revenue was equivalent to its 2020 revenue.

Finally, Plaintiff seeks damages of $304,897, an amount she argues represents Affinity Media's profits attributable to the infringement of Plaintiff's copyright. Plaintiff relies on Affinity Media's income statement for the period ending on December 31, 2018, Ex. 5, ECF No. 50-5, and its monthly bank deposit records from January through October 2019. Plaintiff asserts—based on Affinity Media's 2018 income statement—that Affinity Media had revenue in 2019 of $1,133,448. Roman Aff. ¶ 46; *see* Ex. 5, ECF No. 50–5. Plaintiff then multiplied this figure by 26.9 percent—the share of the total value of Affinity Media's 2019 bank deposits which occurred between January and March of 2019—to equal $304,897. Roman Aff. ¶¶ 43–50, ECF No. 50; *See* Ex. 6, ECF No. 50–6. Plaintiff's calculations regarding Affinity Media's profits also rest on a number of questionable assumptions, most notably that Affinity Media's income in 2019 was equivalent to that of 2018.

Plaintiff therefore has not proven her requested damages to a reasonable degree of certainty.  However, it is clear that Plaintiff is entitled to damages, and the Court is able to determine an appropriate amount of actual damages based on the evidence before it.  The Affinity Defendants do not receive income from subscriptions to TheHomeMagKC.  They receive income only from advertisers.  Any income the Affinity Defendants received from the Photograph is therefore a result of advertisers seeing the January 2019 issue—with the Photograph on the cover—and deciding to advertise in TheHomeMagKC thereafter.  The Affinity Defendants issue TheHomeMagKC monthly, and the Court therefore concludes that—at most—the Photograph is responsible for a portion of the revenue advertisers paid to be in the February 2019 issue of TheHomeMagKC.  However, Plaintiff has not shown—and it seems unlikely—that advertisers made their decision to advertise in TheHomeMagKC solely because Plaintiff's Photograph was on the cover.  The Court therefore believes Plaintiff's Photograph is responsible for a small portion of advertisers' decisions to advertise in TheHomeMagKC.  As such, Plaintiff has proven damages of $60,000.

## Conclusion

Plaintiff's motion for default judgment as to damages is GRANTED IN PART.  The Affinity Defendants are jointly and severally liable to Plaintiff in the amount of $60,000 plus pre- and post-judgment interest in accordance with the rate prescribed by 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

Date:  August 11, 2022   /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT